UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No.: CCB-18-0558 |
| | ) | |
| v. | ) | 18 U.S.C. § 1349 |
| | ) | (Conspiracy) |
| ABDUL AMAN, | ) | |
| Defendant. | ) | 18 U.S.C. § 1031(a) |
| | ) | (Major Fraud against the United States) |
| | ) | |
| | ) | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. |
| | ) | 2461(c) |
| | ) | (Criminal Forfeiture) |

**FILED**
DEC - 4 2018
Clerk, U.S. District and Bankruptcy Courts

### INDICTMENT

The Grand Jury charges that:

#### General Allegations

At all times relevant to this Indictment, unless a specific date is noted:

Background

1. Defendant Abdul Aman ("Aman") was employed as a linguist recruiter by Government Contractor #1 from on or about May 17, 2010 through on or about May 23, 2012. Government Contractor #1 provided Aman with the email account aaman@[redacted].com during his employment.

2. Government Contractor #1 is a professional services company currently headquartered in Fairfax, VA.

3. Co-conspirator #1 is a close associate of Aman who is proficient in the Dari and Pashto languages.

4. Mission Essential Personnel ("MEP") is a government contractor headquartered in New Albany, Ohio.

5.      Government Contractor #2 is a language services provider headquartered in Westerville, Ohio.

6.      On or about September 7, 2007, the United States Army awarded contract W911W4-07-D-0010 to MEP to supply qualified linguists to serve in support of United States military operations in Afghanistan (the "Contract"). The initial value of the Contract was $703,000,000.

7.      In or about 2008, MEP awarded subcontract MEP-08-0001 to Government Contractor #1 to identify and recruit qualified linguists that were proficient in the Dari and Pashto languages for the Contract.

8.      In or about February 2008, MEP also engaged Government Contractor #2 as a subcontractor on the Contract to administer independent language tests to the linguist candidates identified by Government Contractor #1. This independent testing was conducted during short, telephone interviews, known as Oral Proficiency Interviews ("OPIs"), which were conducted to ensure that linguist candidates identified by Government Contractor #1 met minimum proficiency standards in the Dari and Pashto languages.

9.      During the recruiting process, Government Contractor #1 recruiters collected personal information from linguist candidates—name, phone number, street address, email address, social security number, and date of birth—and shared it with Government Contractor #2, which used this information to verify the identity of linguist candidates during the OPI tests.

10.     Linguist candidates that met the minimum proficiency standards on the OPI test were sent to the MEP's Pre-Deployment Processing Center ("PDPC") in Linthicum, Maryland, where they underwent additional testing and training before being deployed to Afghanistan.

Government Contractor #1 Financial Incentives

11. Government Contractor #1 hired recruiters, including Aman, to identify and recruit qualified linguist candidates for positions on the Contract.

12. Government Contractor #1 recruiters were paid a base salary, and could achieve bonuses of between $250 and $2,500 based on how far through a multi-step vetting process, which included PDPC, their linguist candidates progressed ("Recruiting Bonuses").

13. Government Contractor #1 also paid bonuses to third-parties that referred linguist candidates to the company's recruiters ("Referral Bonuses"). Referral Bonuses of between $5,000 and $7,000 were paid directly to the referrer of a linguist candidate that was hired and was deployed to Afghanistan.

## COUNT ONE
### Conspiracy to Commit Wire Fraud and Mail Fraud
### (18 U.S.C. § 1349)

14. Paragraphs 1 through 13 of the General Allegations are re-alleged and incorporated by reference as if set out in full.

15. From in or about March 2011, to in or about May 2012, in the District of Maryland and elsewhere, Aman knowingly and intentionally combined, conspired, confederated, and agreed with co-conspirator #1 and others known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

   a. to devise and intend to devise a scheme and artifice to defraud the United States and Government Contractor #1, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted certain wire communications in interstate and foreign commerce for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343; and

b. to devise and intend to devise a scheme and artifice to defraud the United States and Government Contractor #1, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to cause to be delivered by mail, at the place at which it was directed to be delivered by the person to whom it was addressed for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341.

*Object of the Conspiracy*

16. It was the object of the conspiracy for Aman to fraudulently obtain Recruiting Bonuses from Government Contractor #1 by falsifying OPI tests for linguist candidates that could not meet minimum proficiency standards under the Contract, and to fraudulently obtain Referral Bonuses from Government Contractor #1 by supplying Government Contractor #1 with false information regarding prospective linguist candidates for the Contract.

*Manner and Means of the Conspiracy*

17. The manner and means by which Aman and co-conspirator #1, and others, would and did carry out the conspiracy included, but were not limited to, the following:

a. Aman would knowingly recruit linguist candidates that did not meet the minimum language proficiency standards in Pashto and/or Dari under the Contract;

b. In or about March 2011, Aman and co-conspirator #1 agreed that co-conspirator #1 would take OPI tests on behalf of Aman's linguist candidates that did not meet the minimum language proficiency standards;

c. To enable co-conspirator #1 to impersonate candidates during OPI tests, Aman would supply co-conspirator #1, often by email, with candidates' biographical information as well as the date and time of candidates' OPI tests;

d.  Aman would provide Government Contractor #1 and Government Contractor #2 with co-conspirator #1's telephone number in place of the linguist candidates' telephone numbers or would collect candidates' cellular telephones and provide them to co-conspirator #1 for using during the candidates' OPI test;

e.  When Government Contractor #2 testers would call the telephone number provided for a linguist candidate to administer the OPI test, co-conspirator #1 would use the linguist candidate's personal information to impersonate the candidate and pass the OPI test;

f.  The linguist candidate (for whom co-conspirator #1 had passed an OPI test) would be sent to PDPC in Linthicum, Maryland, for additional language testing and training for potential deployment to Afghanistan;

g.  Aman received Recruiting Bonuses from Government Contractor #1 based on linguist candidates that Government Contractor #1 hired because of falsified OPI tests;

h.  To obtain Referral Bonuses to which he was not entitled, Aman would provide Government Contractor #1 with false information regarding the referrers of certain of his linguist candidates;

i.  In place of a candidate's true referrer, Aman would falsely represent, or cause to be represented, to Government Contractor #1 that a different person—typically one of Aman's family members or close associates—had referred the candidate, thereby claiming Referral Bonuses for the false referrers;

j.  Government Contractor #1 would send Referral Bonus checks by U.S. Mail made out to the false referrers on the basis of the false representations;

    k.      Aman would direct the false referrers to provide him with the proceeds from the Referral Bonus checks.

*Overt Acts*

18.    In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed in the District of Maryland and elsewhere:

    a.      On or about March 30, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate;

    b.      On or about May 27, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate, and indicated that the linguist candidate's OPI test would occur on May 28, 2011 between 11 a.m. and 1 p.m.;

    c.      On or about June 11, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate, and indicated that the linguist candidate's cellphone was available to co-conspirator #1;

    d.      On or about June 29, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate, and indicated the linguist candidate's OPI test would occur on June 29, 2011 between 12 p.m. and 2 p.m.;

    e.      On or about July 19, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate;

    f.      On or about August 11, 2011, co-conspirator #1 sent an email at Aman's behest requesting a Referral Bonus for a linguist candidate that he had not in fact referred to Government Contractor #1.

    g.      On or about September 23, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate;

h.  On or about October 2, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate, and indicated that the linguist candidate's OPI test would occur on October 2, 2011 between 1 p.m. and 3 p.m.;

i.  On or about October 13, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate, and indicated that the linguist candidate's OPI test would occur on October 14, 2011 between 1 p.m. and 3 p.m.;

j.  On or about September 30, 2011, Aman asked a Government Contractor #1 employee to schedule a linguist candidate's OPI test for October 2, 2011, and provided the Government Contractor #1 employee with co-conspirator #1's phone number in place of the linguist candidate's;

k.  On or about October 2, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate;

l.  On or about October 26, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate, and indicated that the linguist candidate's OPI test would occur on October 28, 2011 between 4 p.m. and 6 p.m.;

m.  On or about November 12, 2011, Aman provided co-conspirator #1 with the personal information of a linguist candidate, and indicated that the linguist candidate's OPI test would occur on November 12, 2011 between 4 p.m. and 6 p.m.;

n.  On or about April 29, 2012, Aman provided co-conspirator #1 with the personal information of a linguist candidate;

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
## Major Fraud against the United States
## (18 U.S.C. § 1031(a))

19. Paragraphs 1 through 13 of the General Allegations are re-alleged and incorporated by reference as if set out in full.

*Scheme and Artifice*

20. From in or about March 2011 and in or about May 2012, in the District of Maryland and elsewhere, Aman and others, known and unknown to the Grand Jury, in a contract with the United States, where the amount of the contract was $1,000,000 or more, did knowingly execute and attempt to execute a scheme and artifice with the intent: (a) to defraud the United States; and (b) to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

*Purpose of the Scheme and Artifice*

21. Paragraph 16 of Count One is re-alleged and incorporated by reference as if set out in full.

*Manner and Means of the Scheme and Artifice*

22. Paragraphs 17a through 17k and 18a through 18n of Count One are re-alleged and incorporated by reference as if set out in full.

*Execution of the Scheme and Artifice*

23. Between on or about March 2011 and in or about May 2012, within the District of Maryland and elsewhere, Aman and others known and unknown to the Grand Jury, did knowingly execute and attempt to execute the scheme and artifice as described above, with the intent to defraud the United States of America, and to obtain money and property by means of

8

false and fraudulent pretenses, representations, or promises, to wit: by causing co-conspirator #1 to take OPI tests on behalf of linguist candidates that were deployable to Afghanistan.

All in violation of Title 18, United States Code, Section 1031(a).

## FORFEITURE ALLEGATION

The Grand Jury further charges that:

1. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of an offense in violation of 18 U.S.C. § 1349, as alleged in this indictment, the defendant shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, a money judgment in the amount of the total loss caused by the defendant's criminal conduct, as determined by the Court at sentencing.

2. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

**SIGNATURE REDACTED**

FOREPERSON

11-17-2018

SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

By: _____
MICHAEL P. MCCARTHY
TRIAL ATTORNEY, FRAUD SECTION