UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No.: 1:18-CR-360 (CKK) |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | (Conspiracy) |
| ABDUL AMAN, | ) | |
| Defendant. | ) | |

**FILED**

JAN -3 2019

Clerk, U.S. District and
Bankruptcy Courts

## FACTUAL BASIS FOR PLEA

Pursuant to Federal Rule of Criminal Procedure 11, the United States and Abdul Aman ("Aman" or "defendant") stipulate and agree that the following facts fairly and accurately describe the defendant's conduct in the offense to which he is pleading guilty. These facts do not constitute all of the facts known to the parties concerning the charged offense and related conduct. This statement is being submitted to demonstrate that sufficient facts exist to establish that the defendant committed the offense to which he is pleading guilty. The defendant knowingly, voluntarily, and truthfully admits to the facts set forth below.

Background

1. On or about September 7, 2007, the United States Army awarded contract W911W4-07-D-0010 to Mission Essential Personnel ("MEP") to supply qualified linguists to serve in support of United States military operations in Afghanistan (the "Contract"). The initial value of the Contract was approximately $703,000,000.

2. Government Contractor #1, a professional services company currently headquartered in Fairfax, VA, had a subcontract with MEP to identify and recruit qualified linguists that were proficient in the Dari and Pashto languages to serve with U.S. military forces in Afghanistan.

3. Aman was employed as a linguist recruiter by Government Contractor #1 from on or about May 17, 2010 through on or about May 23, 2012.

4. MEP also engaged Government Contractor #2 as a subcontractor to administer independent language tests to the linguist candidates identified by Government Contractor #1. This independent testing was conducted during short, telephone interviews, known as Oral Proficiency Interviews ("OPIs"), which were conducted to ensure that linguist candidates identified by Government Contractor #1 met minimum proficiency standards in the Dari and Pashto languages.

5. During the recruiting process, Government Contractor #1 recruiters, including Aman and others, collected personal information from linguist candidates—name, phone number, street address, email address, social security number, and date of birth—and shared it with Government Contractor #2, which used this information to verify the identity of linguist candidates during the OPI tests.

6. Linguist candidates that met the minimum proficiency standards on the OPI test were sent to the MEP's Pre-Deployment Processing Center ("PDPC") in Linthicum, Maryland, where they underwent additional testing and training before being deployed to Afghanistan.

7. Government Contractor #1 recruiters were paid a base salary, and could achieve bonuses of between $250 and $2,500 based on how far through a multi-step vetting process, which included PDPC, their linguist candidates progressed ("Recruiting Bonuses").

8. Government Contractor #1 also paid bonuses to third-parties that referred linguist candidates to the company's recruiters ("Referral Bonuses"). Referral Bonuses of between $5,000 and $7,000 were paid directly to the referrer of a linguist candidate that was hired and was deployed to Afghanistan.

9. Co-conspirator #1 is a close associate of Aman.

The Conspiracy

10. From in or about March 2011 to in or about May 2012, in the District of Columbia and elsewhere, Aman and co-conspirator #1 conspired to commit the offenses of wire fraud and mail fraud in order to fraudulently obtain Recruiting and Referral Bonuses from Government Contractor #1.

Manner and Means of the Conspiracy

11. The manner and means by which Aman and co-conspirator #1, and others, carried out the conspiracy included, but were not limited to, the following:

    a. In or about March 2011, Aman and co-conspirator #1 agreed that co-conspirator #1 would take OPI tests on behalf of Aman's linguist candidates that could not pass the OPI test on their own;

    b. To enable co-conspirator #1 to impersonate candidates during OPI the tests, Aman supplied co-conspirator #1, by email and other means, with candidates' biographical information as well as the date and time of candidates' OPI tests;

    c. Aman provided his Government Contractor #1 manager with co-conspirator #1's telephone number in place of candidates' telephone numbers;

    d. Aman's Government Contractor #1 manager entered co-conspirator #1's telephone number into computer system that caused it to be supplied to Government Contractor #2 for use during the candidates' OPI test;

    e. On at least one occasion, Aman collected a candidate's cellular telephone and provide it to co-conspirator #1 for using during the candidate's OPI test;

    f. When Government Contractor #2 testers called the telephone number that Government Contractor #1 provided for a linguist candidate (which was in fact co-conspirator #1's telephone number, or the number of a cellular telephone in co-

conspirator #1's possession), co-conspirator #1 used the linguist candidate's personal information that he had received from Aman to impersonate the candidate and pass the OPI test;

g. The linguist candidate (for whom co-conspirator #1 had passed an OPI test) would be sent by MEP to PDPC in Linthicum, Maryland, for additional language testing and training for potential deployment to Afghanistan;

h. Between March 30, 2011 and April 29, 2012, using his Government Contractor #1-provided email address, Aman sent the personal information of at least 14 linguist candidates to co-conspirator #1;

i. Aman received Recruiting Bonuses from Government Contractor #1 based on linguist candidates that MEP hired because of falsified OPI tests;

j. To obtain Referral Bonuses to which he was not entitled, Aman provided Government Contractor #1 with false information regarding the referrers of certain of his linguist candidates;

k. In place of a candidate's true referrer, Aman falsely represented to Government Contractor #1 that a different person—typically one of Aman's family members or close associates—had referred the candidate, thereby claiming a Referral Bonus for the false referrer;

l. During his employment with Government Contractor #1, Aman provided false information regarding a candidate's referrer to Government Contractor #1 at least eight times;

m. Because of Aman's false representations, Government Contractor #1 would send Referral Bonus checks by U.S. Mail made out to false referrers;

    n.    Aman would direct the false referrers (i.e. his family members or close associates) to provide him with the proceeds from the Referral Bonus checks.

Specific Example of Execution of the Scheme

2. On or about March 30, 2011, Aman sent an email from his Government Contractor #1-provided email address to co-conspirator #1 with a subject of "OPI Test." In the body of the email, Aman wrote, "Hello, The following is all His information that you asked for." Below this text was the personal information of linguist candidate K.Z.

3. In approximately March or April 2011, co-conspirator #1, using the information received from Aman on or about March 30, 2011, impersonated K.Z. and passed K.Z.'s OPI test.

4. In approximately July 2011, Aman falsely represented to Government Contractor #1 that co-conspirator #1 had provided the referral for K.Z., knowing that one of K.Z.'s family members had in fact referred K.Z. to Government Contractor #1.

5. As a result, on or about September 14, 2011, Government Contractor #1 sent by U.S. mail a Referral Bonus check to co-conspirator #1 in the amount of $5,500, even though co-conspirator #1 had not referred K.Z. to Government Contractor #1.

6. Co-conspirator #1 provided the proceeds of the check to Aman at Aman's direction.

7. Government contractor #1 paid a $2,000 Recruiting Bonus to Aman for recruiting K.Z. to work on the Contract.

Financial Benefit to Aman

8. The Recruiting Bonuses and Referral Bonuses that Aman obtained from Government Contractor #1 as a result of the scheme described above totaled at least $40,000.

    Respectfully submitted,

    SANDRA L. MOSER
    Acting Chief, Fraud Section

Criminal Division
United Sates Department of Justice

By:   /s/ *Michael P. McCarthy*   1/3/19

Michael P. McCarthy, D.C. Bar #1020231
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Bond Building, Fourth Floor
Washington, D.C. 20530
202) 305-3995
Michael.McCarthy2@usdoj.gov

6

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Factual Basis for Plea fully.

I have read every word of this Factual Basis for Plea or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorneys, I agree and stipulate to this Factual Basis for Plea, and declare under penalty of perjury that it is true and correct.

Date: 12/20/18

Abdul Aman, defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Factual Basis for Plea, and have reviewed it fully with my client. I concur in my client's desire to adopt and stipulate to this Factual Basis for Plea as true and accurate.

Date: 12/21/2018

Eric S. Montalvo
William R. Cowden
Counsel for the defendant

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Factual Basis for Plea fully.

I have read every word of this Factual Basis for Plea or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorneys, I agree and stipulate to this Factual Basis for Plea, and declare under penalty of perjury that it is true and correct.

Date: 12/20/18

Abdul Aman, defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Factual Basis for Plea, and have reviewed it fully with my client. I concur in my client's desire to adopt and stipulate to this Factual Basis for Plea as true and accurate.

Date: 12/21/2018

Eric S. Montalvo
William R. Cowden
Counsel for the defendant